UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'ANDREE BLACK,

        Plaintiff,        Civil Action No. 19-12930
                                    Honorable Mark A. Goldsmith
v.                                   Magistrate Judge Elizabeth A. Stafford

MONAHAN, *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO
GRANT IN PART AND DENY IN PART DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT [ECF NO. 17]</u>**

## I. Introduction

Plaintiff D'andree Black, a prisoner proceeding *pro se*, sues Corrections Officers Nicholas Monahan and James Cooper under 42 U.S.C. § 1983. Black alleges that the Michigan Department of Corrections (MDOC) officers violated his Eighth Amendment and Fourteenth Amendment rights. [ECF No. 1]. Defendants move for summary judgment, arguing that Black failed to exhaust his administrative remedies and that

the Eleventh Amendment protects them from suit in their official capacities. [ECF No. 17].[1]

The Court recommends that defendants' motion for summary judgment be granted in part and denied in part.

## II. Background

Black's complaint alleges that, while he was incarcerated at Cooper Street Correctional Facility (JCS), Monahan approached him "for no apparent rhyme or reason" in front of the property room. [ECF No. 1, PageID.7]. Black says that Monahan said, "[N]ow I am putting your ass in the hole" for possessing contraband—a permanent marker. [*Id.*]. Monahan allegedly said, "[T]urn your ass around and cuff the fuck up now," and then intentionally inflicted unnecessary "pain and injuries" by "plac[ing] the handcuffs on extremely to[o] tight." [*Id.*]. Black says that when he asked Monahan to loosen the handcuffs, Monahan responded, "If you would had turn [*sic*] your ass around and cuff-up I wouldn't had to put them on so tight, that will teach you a lesson." [*Id.*, PageID.8]. Black then "lost consciousness due to the extreme tightness and pain" while being escorted to segregation. [*Id.*].

---

[1] The Honorable Mark A. Goldsmith referred this case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b). [ECF No. 16].

Black also asserts that his segregation cell had "both of the outside windows wide open," exposing him to 20-degree weather for about 72 hours. [*Id.*]. Black says that he asked Monahan to close the windows, but that Monahan laughed and said, "A little cold winter air never help anyone." [*Id.*].

Black's claim against Cooper arises from his supervisory role. He asserts that Cooper "witness[ed] the whole ordeal" but "made no efforts to correct his subordinate['s] wrongful misconduct." [*Id.*, PageID.8-9]. Though "Cooper was in the position as the higher official to correct this incidence," he acquiesced in Monahan's use excessive force. [*Id.*, PageID.9]. And when Black asked Cooper to loosen the handcuffs, Cooper responded, "I don't give a dam[n] about no dam[n] handcuffs being to[o] dam[n] tight, I am giving you a direct order to stand up and start walking." [*Id.*, PageID.10].

In terms of injuries, Black says that he suffered "momentary los[s] of consciousness, temporary los[s] of mobility in the right hand, broken skin, redness, swelling" and continuing nerve damage. [*Id.*, PageID.14]. He alleges that a nurse found that the too-tight handcuffs caused the nerve damage and she referred him to a doctor. [*Id.*]. Black seeks compensatory and punitive damages. [*Id.*].

3

## III. Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id.* at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93 (emphasis in original). A prisoner's grievance must give "prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (citation and internal quotation marks omitted).

Requiring exhaustion allows prison officials a chance to resolve disputes about the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim," but it is

5

self-evident that an untimely or otherwise improperly filed grievance does not fulfill the exhaustion requirement. *Id.*; *see also Woodford*, 548 U.S. at 97. Finding otherwise "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 548 U.S. at 97.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

**B.**

Black filed a grievance with allegations that mirror those in his complaint. [ECF No. 17-3, PageID.154-156].[2] But Defendants assert that the grievance was untimely under the MDOC Policy Directive 03.02.130. [ECF No. 17, PageID.130-131].

The Policy Directive describes a strict three-step grievance process. The relevant portion of the process requires the prisoner to first attempt to

---

[2] In an argument heading, Defendants make a plainly untrue claim that "Black did not file any grievances regarding the allegations made in his complaint." [ECF No. 17, PageID.125].

6

resolve informally the problem with the allegedly offending staff within two business days of learning about the grievable issue, and then file a Step I grievance about any unresolved issues with a grievance coordinator within five days of that informal effort. PD 03.02.130, ¶¶ P and R. A prisoner who fails to file his grievance timely has not properly exhausted it. *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).

Black filed his grievance in June 2019, months after the February 2019 incident. [ECF No. 17-3, PageID.154-156]. The grievance was rejected as untimely. [*Id.*, PageID.157]. Black appealed, but the rejection was upheld through the final administrative step. [*Id.*, PageID.152-153]. Defendants rely on Black's late filing of his grievance in their motion for summary judgment. [ECF No. 17, PageID.130-131].

But Black explained on his Step I grievance form that Monahan's actions prevented him from resolving his complaint informally and that Monahan had concealed his identity, causing him to file his grievance late. [ECF No. 17-3, PageID.154]. In a declaration that Black submits in response to defendants' motion for summary judgment, he maintains that he had a "valid reason for the delay," including that Monahan concealed his

7

name tag.³ [ECF No. 19, PageID.162-163]. Black says that he was unable to learn Monahan's name before he was transferred from JCS to Cotton Correctional Facility (JCF). [*Id.*, PageID.162-163]. Black also alleges that he tried to identify Monahan after his transfer; he sought help from Inspector Bailey, Sargent Coordinator Johnson and JCF Grievance Coordinator McCumber-Henry. [*Id.*, PageID.164-165]. Black submits the letters that he purports to have sent to Bailey, Johnson and McCumber-Henry requesting assistance. [*Id.*, PageID.184-186]. The copy of the letter Black alleges he wrote to McCumber-Henry has this handwritten response in the left margin: "No. I have no way of obtaining that info." [*Id.*, PageID.186]. Black claims he did not learn Monahan's name until June 15, 2019, which is the day his grievance was filed. [*Id.*, PageID.164-165; ECF No. 17-3. PageID.154].

As Black notes, the grievance policy requires a prisoner to identify the "names of all those involved in the issue" on the Step I grievance form. PD 03.02.130, ¶ S. The Policy Directive also says that a grievance should not be rejected as untimely "if there is a valid reason for the delay; e.g.,

---

³ Black makes his declaration under "under penalty of perjury." [ECF No. 19, PageID.161-166]. The Court may properly consider this declaration in response to defendants' motion for summary judgment. 28 U.S.C. § 1746; Rule 56(c)(4); *Sfakianos v. Shelby Cty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012).

transfer." PD 03.02.130, ¶ J(5).  Black claims that Monahan's concealment of his identity and the prisoner officials' failure to help him identify Monahan after his transfer are valid reasons for his untimely grievance.  The Court finds that the record precludes summary judgment on this issue.

First, a prison transfer can justify an untimely grievance.  PD 03.02.130, ¶ J(5); *Spicer v. Schooley*, No. 18-12911, 2019 WL 2929120, at *2 (E.D. Mich. July 8, 2019).  Second, prison officials had a duty to help Black identify Monahan if he requested their help.  Michigan prisoners must follow a strict three-step process to exhaust their administrative remedies, so "[a]ssistance in submitting a grievance is a logical and essential step to obtaining access to the courts." *Nelson v. Gowdy*, No. 03-10116-BC, 2006 WL 2604679, at *2 (E.D. Mich. Sept. 11, 2006).  Courts have thus held that a prison's refusal to assist an inmate asking for help with filing a grievance form is a valid excuse for improper exhaustion.  *Tanner v. Watson*, No. 07-14579, 2008 WL 3200019, at *7 (E.D. Mich. Aug. 6, 2008) (citing *Ramos v. Smith*, 187 F. App'x 152, 154 (3rd Cir. 2006) and *Fontenot v. Global Expertise in Outsourcing*, 232 F. App'x 393, 394 (5th Cir. 2007)).

In *Threet v. Phillips*, the defendants argued that the plaintiff failed to properly exhaust his administrative remedies because he did not name the person being grieved.  No. 14-CV-13345, 2016 WL 374121, at *5 (E.D.

9

Mich. Feb. 1, 2016). But the plaintiff explained that the hospital staff members refused to provide the names of the people involved and that his attempts to get copies of his medical records had failed. *Id.* The court noted, "When a prisoner is unable to exhaust all available remedies because prison officials have thwarted the inmate's attempts at exhaustion, then proper exhaustion should be assumed." *Id.* After drawing all inferences in favor of the plaintiff, the court assumed "that prison officials thwarted plaintiff's attempt to properly exhaust his administrative remedies by withholding critical information." *Id.* The Court makes the same assumption here.

In their reply, defendants argue (1) that Black "had access to grievance forms at JCF" and could have filed a timely grievance after he arrived at the facility; (2) that he could have named Monahan "as a 'John Doe' or 'Unknown Corrections Officer'"; (3) that Inspector Bailey and Grievance Coordinator McCumber-Henry testify in affidavits that they do not recall Black contacting them for help; and (4) that MDOC policy required Black to seek assistance from the warden, not an inspector or grievance coordinator. [ECF No. 22, PageID.224; ECF No. 22-3; ECF No. 22-4]. These arguments lack merit.

10

To begin with, the MDOC Policy Directive does not say that a prisoner may file a grievance against an unnamed officer; the policy directive requires the grievant to name those involved. PD 03.02.130, ¶ S. Courts have recognized a limited exception to that requirement: "[a]n inmate need not identify each officer by name when the identities of the particular officers are unknown." *Watson v. Jamsen*, No. 16-13770, 2017 WL 9477709, at *3 (E.D. Mich. Aug. 11, 2017), *adopted*, No. 16-CV-13770, 2017 WL 4250477 (E.D. Mich. Sept. 26, 2017) (internal citation and quotation marks omitted). When the prisoner does not know the officer's name, he may "describe the person or persons against whom he has a complaint with sufficient information to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court." *Id.* (internal citation and quotation marks omitted). But the PLRA requires a prisoner to follow the "prison's requirements." *Jones*, 549 U.S. at 218. The PLRA does not mandate that prisoners know or apply judicially created exceptions to the prison requirements when filing a grievance.

Bailey's and McCumber-Henry's statements that they do not recall Black requesting help in identifying Monahan simply show a factual dispute that is "not appropriately resolved on a motion for summary judgment, since

11

the Court must on a motion for summary judgment accept the facts in the light most favorable to the plaintiff." *Tanner*, 2008 WL at 3200019 at *7 (citing *Nelson*, 2006 WL 2604679 at *3 and Rule 56).

Finally, the Court rejects defendants' argument that Black had to contact the warden to request help with his grievance. Defendants cite a paragraph of the Policy Directive requiring wardens and FOA Region Managers to "ensure prisoners and parolees are provided assistance in completing a grievance form" if help is needed. [ECF No. 22, PageID.224, citing PD 03.02.130, ¶ N]. Nothing in this paragraph precludes a prisoner from asking for help from other prison officials. And defendants' claim that a prisoner may not ask a *grievance coordinator* for help with completing a grievance is most curious.

For these reasons, defendants fail to meet their burden of showing that summary judgment should be granted because of Black's alleged improper exhaustion of his administrative remedies.

## C.

Defendants next argue that the Eleventh Amendment bars § 1983 claims against them in their official capacity. [ECF No. 17, PageID.131-132]. This argument is more properly categorized as being for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Eleventh Amendment protects states, their departments and agencies from suit in federal court for injunctive relief or damages by their own citizens or citizens of another state. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This immunity extends to state employees being sued in their official capacity as well. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010). Without clear abrogation of a state's immunity under a valid exercise of power, it may not be sued without its consent. *Halderman*, 465 U.S. at 98-99; *Green v. Mansour*, 474 U.S. 64, 68 (1985). Michigan has not consented to civil rights suits in federal court. *Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). And the MDOC is immune from being sued for money damages under § 1983. *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Thus, Black's claims for monetary damages against the defendants in their official capacities should be dismissed.

## IV. Conclusion

The Court recommends that the defendants' motion for summary judgment **[ECF No. 17]** be **GRANTED IN PART AND DENIED IN PART**.

                                               s/Elizabeth A. Stafford
                                               ELIZABETH A. STAFFORD
                                               United States Magistrate Judge

Dated: November 30, 2020

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of

objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 30, 2020.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
